# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JULIE DIANNE FARMER,<br><br>Defendant. | 1:11-CR-0026-LJO<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND IN THE ALTERNATIVE MOTION FOR NEW TRIAL AND REQUEST FOR JUROR INFORMATION AND EVIDENTIARY HEARING (DOCS. 484, 488) |

## I. INTRODUCTION

On April 22, 2014, a jury convicted Defendant Julie Dianne Farmer ("Defendant" or "Farmer") of conspiracy to commit mail fraud, wire fraud, and bank fraud under 18 U.S.C. § 1349; mail fraud under 18 U.S.C. § 1341; and wire fraud under 18 U.S.C. § 1343 for her involvement in a large-scale mortgage fraud scheme perpetrated by Crisp, Cole & Associates and Tower Lending ("CCRE"). Doc. 441. The jury acquitted Defendant on the four remaining mail fraud counts, two wire fraud counts, and the conspiracy to launder money count. *Id.*

Defendant moves for a judgment of acquittal under Fed. R. Crim P. 29(c) or in the alternative for a new trial under Fed. R. Crim. P. 33(a). Doc. 484 at 1. Defendant asserts she is entitled to a judgment of acquittal because the evidence was insufficient to support the jury's verdict. *Id.* at 2. Likewise, Defendant argues that she is entitled to a new trial because the verdict was contrary to the weight of the evidence. *Id.* at 9. Further, Defendant claims that she is entitled to a new trial because of the Court's exclusion of testimony from Dr. Howard Terrell and Dr. Harold Seymour. *Id.* Defendant also requests juror information and an evidentiary hearing regarding "[a]n issue of potential jury influence." Doc. 488

1

at 1.

For the reasons discussed below, the Court DENIES Defendant's motion for a judgment of

acquittal, motion for a new trial, and request for juror identification and an evidentiary hearing.

## II. STANDARD OF DECISION

Evidence is sufficient to support a conviction when, "after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States

v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc). Under *Jackson*, the Court must conduct a

two-step inquiry to determine whether the evidence is sufficient to support the conviction:

> First, [the] court must consider the evidence presented at trial in the light most favorable to the
> prosecution . . . . Second, after viewing the evidence in the light most favorable to the
> prosecution, [the] court must determine whether this evidence, so viewed, is adequate to allow
> *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

*Nevils*, 598 F.3d at 1164 (citing *Jackson*, 443 U.S. at 319) (emphasis in original). Under *Jackson*, the

"jury's credibility determinations are . . . entitled to near-total deference." *Bruce v. Terhune*, 376 F.3d

950, 957 (9th Cir. 2004).

A motion for a new trial may be granted under Fed. R. Crim P. 33 only if the Court "concludes

that . . . the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of

justice may have occurred." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (quoting

*United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992)). Grounds for a new trial are present only in

"exceptional circumstances." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012).

## III. DISCUSSION

**A.   Defendant's Motion for Acquittal.**

Defendant does not dispute the existence of the fraud scheme perpetrated by CCRE, but denies

having any knowledge of it. Defendant argues the evidence was insufficient to support the jury's verdict

in that the "Government has not proved the requisite criminal intent." Doc. 484 at 5. Specifically,

Defendant argues that the evidence was insufficient to establish that she "knew of a scheme to defraud

2

or was involved in a scheme to defraud." *Id.* at 4. Viewing the evidence in the light most favorable to the prosecution, the Court finds that the evidence was adequate to allow a rational trier of fact to find beyond a reasonable doubt that the essential elements of the crimes for which Defendant was convicted were established. *Nevils*, 598 F.3d at 1164.

As the Government notes:

Numerous witnesses and other evidence also confirmed Farmer's extensive knowledge of and key role directing the fraud scheme. For example:

• Loan officer Jerald Teixeira testified that Farmer attended and participated in closed-door meetings with David Crisp, Carl Cole and CCRE's loan officers to discuss CCRE's scheme of purchasing houses in other borrowers' names and making the mortgage payments on those houses. R.T. 755:16-756:20, 757:1-22, 775:5-776:18, 811:22-812:17. At these strategy meetings, the conspirators discussed the fraudulent information – such as falsified CPA/employment letters – that borrowers would require to qualify for the loans. R.T. 774:23-776:18, 809:4-811:10.

• Teixeira discussed with Farmer on multiple occasions that borrowers did not meet a lender's two-year minimum employment requirement and that CCRE would need to falsely verify that the borrowers had, contrary to fact, worked at CCRE for more than two years. R.T. 768:11-769:22. Farmer directed Teixeira to list specific false employment information that CCRE would need to provide when the lenders contacted CCRE to verify the borrowers' employment. R.T. 769:7-770:6.

• Farmer had CCRE employees white-out and falsify information on verification forms supporting loan applications. R.T. 754:8-17, 773:3-17, 774:7-22.

• Farmer directed and supervised Brandice Bingaman and other CCRE employees as they forged borrowers' signatures on documents relating to the flipped properties, in response to an audit by the Department of Real Estate. R.T. 1100:9-1102:24, 1103:15-1104:18, 1105:6-17.

• Farmer tasked CCRE employee Remedios Martinez with assisting her in managing the "flip properties that were owned by the company" and getting them rented out. R.T. 924:15-925:6. Farmer explained that the flip properties were owned by the company, purchased with company money, but were put in someone else's name. R.T. 925:7-926:7. Farmer created an internal form to track these properties with Martinez, and indicated that the rent amounts were being used to partially offset the mortgage payments for the properties. R.T. 930:21-931:11, 940:17-941:15.

• On the straw purchase of 1412 Suffolk by CCRE employee Mark Parsons, Farmer added Mark Parsons to her bank account to obtain a false verification of deposit so that Parsons could qualify for a loan. R.T. 410:9-412:22, 415:20-21. Farmer conceded at trial that the money in her account never belonged to Parsons. R.T. 1705:16-1706:13.

. . .

3

Numerous witnesses testified that they discussed the fraud with Farmer. For example:

• Stovall testified that he specifically notified Farmer, within his first two months at Tower Lending, that loan officer Jayson Costa was using fraudulent CPA letters to obtain loans. R.T. 335:21-337:22.

• Bingaman frequently went to Farmer to obtain false verifications of employment for borrowers from Kevin Sluga. R.T. 1080:16-1081:7, 1132:24-1133:5. Bingaman also overheard Farmer talking to Chris Stovall about a false verification of deposit or employment letter, with Farmer stating that "it was just a little white lie, it wasn't a big deal." R.T. 1085:7-18.

• Bingaman testified that Farmer frequently checked up on the status of the "flip" real estate transactions in the scheme. R.T. 1049:15-1050:7, 1064:18-1065:9. Bingaman had numerous communications with Farmer regarding false verifications of deposit, and relayed to Farmer the amount needed to be transferred to a buyer's account for the loan to be approved. R.T. 1056:11-18; see also R.T. 1083:9-1084:13. • After processing one straw buy transaction, Stovall told Farmer that he was "just getting fed up with all the fraud that's needed to close these loans," but Farmer took no action other than suggesting that Stovall talk to Crisp. R.T. 413:2-18.

• Stovall told Farmer that they were going to have to falsely state $40,000 in monthly income for Leslie Sluga on the loan applications for Sluga's purchase of 11504 Haydock Ct. R.T. 420:23-421:14. Sluga's loan application also falsely stated she had $200,000 in a certain bank account. R.T. 400:17-401:2. Stovall told Farmer that money would need to be put in Sluga's account for the loan. 4/10/14 Tr. at 401:3-402:9. Stovall called Farmer to say when the $200,000 needed to be put in, and Farmer called Stovall back to tell him the money was in the account. R.T. 402:4-21.

. . .

• Megan Balod testified that, on her straw buy home purchases, Farmer called Balod into CCRE's offices and gave Balod blank loan applications to sign. R.T. 112:12-113:15.

• Farmer signed false loan applications on the sale of 10800 Stratton Ct., as power of attorney for her sister and brother-in-law. Farmer was power of attorney on the transaction because the Hargestams were out of the country for an extended period. R.T. 345:10-346:18, 350:4-21, 353:7-17. The loan application listed a fabricated income number of $12,000/month. Trial Ex. 14-B. Stovall discussed the made-up income amounts with Farmer, as "everything was run by her." R.T. 351:3-352:8. Additionally, Farmer and Stovall obtained a false CPA letter from Kevin Sluga to close the loan. 354:1-357:1.

• Janie Stockton testified that Farmer was one of her primary contacts on the properties CCRE purchased in Stockton's name. R.T. 645:18-646:3. Farmer obtained Stockton's personal information from her, including Stockton's social security number, for use in the loan applications. R.T. 628:18-629:14, 652:8-10. Stockton then received several thousand dollars for each home she purchased for CCRE. R.T. 628:8-20, 641:2-24, 657:9-21.

Doc. 489 at 3-5.

Defendant's motion for a judgment of acquittal hinges on whether the evidence was sufficient to find that Defendant did, in fact, knowingly participate in conspiracy and in the mail fraud and wire fraud scheme. *See* Doc. 484 at 5 ("The Government has not proved the requisite criminal intent."). The jury concluded that the evidence was sufficient. Based on the evidence noted above and other evidence, *see* Doc. 489 at 5-7, the jury rejected Defendant's testimony, theory, and argument that she was unaware of the fraud scheme and therefore could not have participated in it. This was a credibility call for the triers of fact to determine based on the ample evidence. Although it may have been in the best interests of some of the prosecution's witnesses to testify against Defendant because they had agreed to a plea bargain with the prosecution (a fact pointed out on direct exam, cross exam, and closing argument), the jury believed the witnesses called by the prosecution and believed neither Defendant nor the witnesses called by Defendant. Making credibility calls was the jury's right and obligation. *See United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004) (holding that "the jury was free to disbelieve [the defendant] and infer the opposite of [her] testimony to support its verdict"); *see also Terhune*, 376 F.3d at 957 (the "jury's credibility determinations are . . . entitled to near-total deference under *Jackson*"). The Court "may not usurp the role of the finder of fact by considering how it would have . . . considered the evidence at trial." *Nevils*, 598 F.3d at 1164.

Viewing the evidence in the light most favorable to the jury's verdict, the Court finds that the evidence was adequate to support that verdict. *See Nevils*, 598 F.3d at 1164 (the Court "may not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt . . . only whether any rational trier of fact could have made that finding"). Accordingly, Defendant's motion for a judgment of acquittal is DENIED.

**B.      Defendant's Motion for a New Trial.**

      **1.      Sufficiency of the Evidence.**

In the alternative to her motion for a judgment of acquittal, Defendant moves for a new trial under Fed. R. Crim. P. 33 on the ground the verdict is contrary to the weight of the evidence. Doc. 484 at 6, 9. The thrust of Defendant's argument is that the verdict is contrary to the weight of the evidence

1   due to conflicting and untrustworthy witness testimony. *See* Doc. 484 at 7-9. Given the ample evidence

2   supporting the jury's verdict noted above, the Court cannot find that the evidence "preponderates

3   sufficiently heavily against the verdict." *Kellington*, 217 F.3d at 1097. It in fact does not.

4           **2.      Exclusion of Testimony.**

5           Defendant also moves for a new trial on the ground the Court erred in excluding the testimony of

6   Dr. Terrell and Dr. Seymour. Doc. 484 at 9. Defendant's motion brings nothing new to the table that was

7   not argued and ruled upon on pre-trial motions. The rulings and reasoning of the Court on the record in

8   open Court are incorporated by reference. Accordingly, Defendant's motion for a new trial is DENIED.

9   **C.   Defendant's Request for Juror Identification and Evidentiary Hearing.**

10          In a "supplement" to her motion, Defendant asserts that four "witnesses heard negative

11  comments from an associate with the Government such as 'she's lying' and displaying a negative

12  demeanor while the Defendant was testifying." Doc. 488 at 1. In support, Defendant filed letters and

13  declarations from those witnesses that explain what they allegedly observed in further detail. Docs. 488-

14  2, 488-3, 488-4, 488-5. Defendant claims that "[t]hese comments were made within hearing distance of

15  the jury." *Id.* at 2. Based on these alleged comments, Defendant argues she "should be entitled to

16  question jurors to determine if these comments were heard and any effect the comments may have had

17  on the jury." *Id.* Defendant requests that she "be given the identity of jurors to investigate any undue

18  jury influence and further an Evidentiary Hearing to determine if any undue influence occurred." *Id.*

19          Defendant's motion is based on pure speculation that the jury noticed, heard, and/or reacted to

20  the alleged comments. Moreover, Defendant's motion assumes that the jury did not follow the Court's

21  instructions to decide the case based solely on admitted evidence. *See United States v. Span*, 75 F.3d

22  1383, 1390 (9th Cir. 1996) ("It is well-settled that 'juries are presumed to follow their instructions.'")

23  (quoting *Zafiro v. United States*, 506 U.S. 534, 540 (1993)). Accordingly, Defendant's motion for juror

24  identification is DENIED.

25

26

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court DENIES Defendant's motion for acquittal, motion for a new trial, and motion for juror identification.  Sentencing will proceed as currently set.

IT IS SO ORDERED.

Dated:   **July 11, 2014**                    **/s/ Lawrence J. O'Neill**
                                     UNITED STATES DISTRICT JUDGE